**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    BRAD HURST,                                No. C-11-1379 EMC

9              Plaintiff,

10        v.                                    **ORDER GRANTING IN PART AND**
                                                **DENYING IN PART PLAINTIFF'S**
11   BUCZEK ENTERPRISES, LLC,                   **MOTION FOR SUMMARY**
                                                **JUDGMENT; AND GRANTING IN**
12             Defendant.                       **PART AND DENYING IN PART**
     _____/          **DEFENDANT'S MOTION FOR**
13                                              **SUMMARY JUDGMENT**

14                                              **(Docket Nos. 35, 39)**

15        Plaintiff Brad Hurst filed suit in California Superior Court on November 5, 2010, against

16   Buczek Enterprises, alleging violations of California wage and hour laws, unfair competition, and

17   breach of the implied covenant of good faith and fair dealing.  Compl., Docket No. 1.  Defendant

18   Buczek removed to federal court on the grounds of diversity jurisdiction.  Docket No. 1.  Buczek

19   asserted counterclaims against Hurst for breach of contract and of the implied covenant of good faith

20   and fair dealing.  *Id.*  Pending before the Court are the parties' cross-motions for summary judgment.

21   Docket Nos. 35, 39.  After considering the parties' submissions and oral argument, and for the

22   reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the parties' motions.

23                      **I.    FACTUAL & PROCEDURAL BACKGROUND**

24        Plaintiff is a landscape contractor and handyman residing in California.  Defendant Buczek is

25   a "property preservation company" based in New York; it provides clients with property

26   maintenance, repair, and cleaning services, typically for vacant, foreclosed homes.  Buczek Depo. at

27   24-25; DiBello Decl., Docket No. 43, Ex. B (Buczek Decl.), ¶¶ 2-4.  It contracts with workers in

28   various states, including California, to provide such services.  While many of its clients own

**United States District Court**

For the Northern District of California

1    properties in California, none of its clients are based in California.  Buczek Decl. ¶¶ 3-4.  Buczek is

2    not registered to do business in California.  Buczek Depo. at 237.

3          In 2007, Plaintiff Hurst responded to a Craigslist advertisement from Buczek requesting

4    landscape services in Northern California.  DiBello Decl., Docket No. 36, Ex. I.  Plaintiff offered the

5    services of Gomez Landscape Partnership, a company he operated with one business partner.

6    Plaintiff informed Buczek that he did not hold a general contractor's license.  Hurst Decl., Docket

7    No. 45, ¶ 3.  After Buczek representatives interviewed Hurst in California, Buczek Depo. at 24, the

8    parties signed an Independent Contractor's Agreement, which provided that Hurst would perform

9    services for Buczek in California.  DiBello Decl., Docket No. 36, Ex. E.  Beginning in October

10   2008, Hurst renewed his contract with Buczek under the name of Hurst Home Services, a name he

11   created after his relationship with Gomez Landscaping ended.  *Id.* Ex. G.

12         From December 2007 until he left Buczek in early 2010, Hurst worked fulltime for

13   Defendant from five to six days per week and had no supplemental work.  Hurst Decl., Docket No.

14   35, ¶ 6; Hurst Depo. at 238; Buczek Depo. at 68.  He received work orders from Buczek each day

15   with an assigned due date for said work.  Hurst used his own tools and equipment for the job,

16   although Buczek sometimes required him to buy specific tools.  Beginning in 2008, Buczek had him

17   purchase a computer from the company with pre-installed software to track the company's work

18   orders.  Hurst Depo. at 250, 290-91.

19         Hurst received between 10-20 work orders per day on average from Buczek.  Hurst Decl.,

20   Docket No. 45, ¶ 11.  The parties dispute whether Mr. Hurst was free to turn down work orders.

21   Buczek provided its contractors with a price matrix listing the prices for different tasks.  Hurst Decl.,

22   Docket No. 35, ¶ 6.  Workers could either accept the prices suggested from clients or submit bids for

23   the work.  Buczek Depo. at 177.  The parties dispute whether Hurst could submit bids at prices

24   different from Buczek's price matrix.  Sometimes Hurst performed the work himself, and sometimes

25   he hired up to a dozen workers to help him complete the tasks when there were too many orders.

26   Hurst Depo. at 324.  Buczek paid Mr. Hurst weekly via direct deposit.  Hurst Decl., Docket No. 35,

27   ¶ 7.  His payments were based on the invoices he submitted for each job, though Buczek sometimes

28

**United States District Court**
For the Northern District of California

1   adjusted the prices.  Hurst Decl., Docket No. 45, ¶ 9 & Ex. B.  Buczek only paid Hurst if and when it

2   received payment from the client.  Buczek Depo. at 287, 292.

3          The work orders contained instructions for tasks to be completed at the subject property.

4   These tasks included, *inter alia*, lawn mowing and landscaping, sales cleans, winterizing,

5   installation and repair, and debris removal.  Hurst Decl., Docket No. 45, ¶¶ 6-7.  Some of the tasks

6   required a license under California law.  *See, e.g.*, Hurst Decl., Docket No. 45, ¶¶ 7, 27 & Ex. N.

7   Mr. Hurst has never held a general contractor's license during the time in question.  The work orders

8   provided instructions as to how to complete each task.  *See, e.g.*, Buczek Depo. at 173; Hurst Decl.,

9   Docket No. 45, Ex. C.  These instructions, and others provided by Buczek, were sometimes pages

10  long, and sometimes specified what products Mr. Hurst had to use (*e.g.*, a certain brand of cleaning

11  product).  *See, e.g.*, Hurst Decl., Docket No. 45, ¶¶ 10, 14-15 & Ex. C, E-G.  Mr. Hurst was required

12  to take detailed photos documenting his completion of each task.  *Id.* ¶¶ 16-18 & Ex. H.  He

13  sometimes submitted hundreds of photos for one job.  *Id. ¶ 18*.  Buczek validated Mr. Hurst's work

14  using the photos and other contractors it sent to properties to verify each others' work and conduct

15  quality control.  *Id.*; Buczek Depo. at 89, 106-07.  Buczek also provided training and assistance to its

16  workers, including one-on-one meetings, conference calls, instructional memos, and offsite

17  trainings.  Hurst Decl., Docket No. 45, ¶¶ 14-15 & Exs. E-G.  The parties dispute whether the

18  offsite trainings and conference calls were mandatory or simply recommended.

19         In 2009, one of Buczek's clients placed Buczek on a three-month probation due in part to

20  concerns about the quality of services offered by Buczek's workers.  Buczek Depo. at 224, 255.

21  Buczek attributed half of its losses in Northern California to Hurst, which it "guesstimate[s]" at

22  $125,000-175,000.  Buczek Depo. at 251-52 (estimating total losses in Northern California at

23  $250,000-350,000, and attributing 50% of that loss to Mr. Hurst).  Buczek informed Mr. Hurst that

24  it was giving him fewer work orders due in part to his quality of work.  DiBello Decl., Docket No.

25  36, Ex. M.

26         In early 2010, Mr. Hurst ceased working for Buczek.  Hurst Depo. at 280-81.  He then filed

27  suit in November 2010, asserting claims for unpaid wages and overtime, Cal. Labor Code §§ 200,

28  1197, 1197.1; failure to provide meal and rest breaks, Cal. Labor Code §§ 226.7, 512; failure to keep

accurate wage and time records, Cal. Labor Code §§ 226, 1174; breach of the implied covenant of good faith and fair dealing; violation of Cal. Labor Code § 2802; unfair competition, Cal. Bus. & Prof. Code § 17200; and civil penalties under Cal. Labor Code §§ 2698, 2699.  Mr. Hurst alleges that Buczek misclassified him as an independent contractor when he was actually an employee. Compl. ¶ 8.  Buczek counter-claimed for breach of contract and of the implied covenant of good faith and fair dealing, alleging that Hurst failed to "timely perform services in a good and reasonable workmanlike manner," and failed to "comply with all relevant laws, rules and regulations." Counter-Claim ¶ 17.

The parties' cross-motions for summary judgment are pending before the Court.

## II.   DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be rendered on a claim or defense, or part of a claim or defense, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, he or she may prevail on a motion for summary judgment only if he or she affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim.  *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992).  In contrast, where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment by demonstrating the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party possesses the initial

1  burden of showing the absence of a genuine issue of fact.  *See Blair Foods, Inc. v. Ranchers Cotton*

2  *Oil*, 610 F.2d 665, 668 (9th Cir.1980).

3  B.   <u>Plaintiff's Motion for Summary Judgment</u>

4      Plaintiff moves for partial summary judgment on two questions addressed below: (1) whether

5  he was a Buczek employee as a matter of law; and (2) whether Buczek has standing to raise its

6  counterclaims under California law.

7      1.   <u>Hurst's Employee Status</u>

8      Plaintiff first argues that he was Buczek's employee as a matter of law because he was an

9  unlicensed contractor performing work for which a contractor's license was required.

10     California Labor Code § 2750.5 provides, in relevant part, that "[t]here is a rebuttable

11 presumption affecting the burden of proof that a worker performing services for which a license is

12 required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and

13 Professions Code, or who is performing such services for a person who is required to obtain such a

14 license is an employee rather than an independent contractor."  Furthermore, "any person

15 performing any function or activity for which a license is required pursuant to Chapter 9

16 (commencing with Section 7000) of Division 3 of the Business and Professions Code shall hold a

17 valid contractors' license as a condition of having independent contractor status."  Section 2750.5

18 thus provides that if one performs work for which a license is required, he or she presumptively an

19 employee.  This presumption can be rebutted only if, *inter alia*, the worker has a valid contractor's

20 license.  Thus, an unlicensed worker performing work for which a license is required is *ipso facto* an

21 employee under 2750.5.

22     However, California Business and Professions Code § 7031(a) provides that "no person

23 engaged in the business or acting in the capacity of a contractor, may bring or maintain any action . .

24 . for the collection of compensation for the performance of any act or contract where a license is

25 required by this chapter without alleging that he or she was a duly licensed contractor at all times

26 during the performance of that act or contract, regardless of the merits of the cause of action brought

27 by the person."  The only relevant exception to section 7031's bar against actions by unlicensed

28 contractors is that those who are employees under section 7053, as opposed to independent

5

United States District Court

For the Northern District of California

contractors, are exempted from section 7031.  Cal. Bus. & Prof. Code § 7053 provides, "this chapter does not apply to any person who engages in the activities herein regulated as an employee who receives wages as his or her sole compensation, does not customarily engage in an independently established business, and does not have the right to control or discretion as to the manner of performance so as to determine the final results of the work performed."

Reading the two sets of statutes together creates an apparent conflict.  Namely, under sections 7031 and 7053, an unlicensed contractor cannot bring suit to collect compensation for work unless he is an employee, but 2750.5 provides that all unlicensed contractors are employees.  Thus, if 2750.5 applies to §§ 7031 and 7053, the latter sections would be rendered superfluous because the employee exception to 7031's bar created by 2750.5 would swallow the rule.  The California Court of Appeal has similarly explained,

> While this provision of section 2750.5 may serve a salutary purpose of providing broad workers' compensation coverage to those injured on a job (*see Webb v. Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 . . . ), the provision results in untoward consequences when it is applied to determinations under sections 7031 and 7053.  As noted above, the effect of sections 7031 and 7053 is to allow one to bring an action to recover compensation if one is an employee but not if one is an unlicensed independent contractor.  But, as we have seen, section 2750.5 precludes a worker without a required license from obtaining independent contractor status and effectively designates the worker as an employee as a matter of law.  Thus, if section 2750.5 were applied to determinations under sections 7031 and 7053, every unlicensed person performing work on a job would be characterized as an employee and not an independent contractor.  This result would repeal by implication section 7031's ban on recovery by an unlicensed contractor.

*Fillmore v. Irvine*, 146 Cal. App. 3d 649, 657 (1983).

To avoid such a result, *Fillmore* held that 2750.5 does not apply in the context of suits for unpaid "compensation for the performance of any act or contract."  § 7031.  Instead, it applies to, *e.g.*, classification for worker's compensation purposes, pension plans, torts, etc.  *See id.* ("We hold that Labor Code section 2750.5 is not applicable to determinations of whether one is an employee or unlicensed contractor under Business and Professions Code sections 7031 and 7053.").  Thus, under *Fillmore*, Plaintiff's status as an employee with a right to sue for wages turns on the application of Section 7053, not the ipso facto rule of Section 2750.5.

United States District Court

For the Northern District of California

Contrary to Plaintiff's argument, *Sanders Const. Co., Inc. v. Cerda*, 175 Cal. App. 4th 430, 432 (2009), while seemingly inconsistent in some respects to *Fillmore* does not dictate a contrary result here.  In *Sanders*, the California Court of Appeal considered a case in which the general contractor, Sanders, hired an unlicensed subcontractor, Humberto, to install drywall.  *Id.* at 432.  Humberto in turn hired six workers to help him with the job.  The six workers later brought wage claims against Sanders, the general contractor.  The Court of Appeal concluded that employees of unlicensed subcontractors, unlike the unlicensed subcontractors themselves, could bring suit as statutory employees under § 2750.5 against the general contractor.  However, it explicitly endorsed *Fillmore*'s reasoning with respect to someone in Plaintiff's position (Humberto), the first-level unlicensed subcontractor.  Indeed, Humberto's wage claim against Sanders had already been dismissed pursuant to § 7031, which the *Sanders* court found to be correct.  *See id.* at 436 ("Under section 7031, for example,  Humberto [the unlicensed drywall finisher] was properly denied his wage claim.").  *Sanders* thus distinguished *Fillmore* only to the extent that it declined to apply *Fillmore* to the workers of an unlicensed subcontractor, who are one step removed from the general contractor.  More importantly, it also distinguished *Fillmore* on the basis that in *Sanders*, unlike in *Fillmore*, the plaintiffs behaved like *employees*, not like independent contractors.  They therefore qualified for the § 7053 exemption from the § 7031 bar, even if § 2750.5 did not apply.  *Id.*

In the case at bar, Plaintiff is in the same position as Humberto, the subcontractor in *Sanders* whom the court determined could not sue pursuant to Section 7031.  He is not an employee of the subcontractor but the subcontractor himself.  Thus, even under *Fillmore*, Section 7031 applies. Moreover, as discussed below there is evidence in the record to suggest Plaintiff could have acted as either an employee or an independent contractor, unlike the plaintiff in *Sanders*.  175 Cal. App. 4th at 436 ("The record offers no evidence that the six claimants were not employees as described under Business and Professions Code section 7031 and Sanders makes no such argument.").

Accordingly, under California law, Plaintiff may not rely on the presumption of employee status set forth in § 2750.5 in order to escape the prohibition against suit set forth in § 7031. However, contrary to Defendant's contention, that does not necessarily doom his claims.  Instead, Plaintiff can still bring his claims if he satisfies the factors set forth in § 7053 to demonstrate that he

United States District Court

For the Northern District of California

is an employee, and thus that § 7031 does not bar his action.  Plaintiff explicitly declined to raise any arguments as to those factors in his motion; rather, he focused solely on the question of whether he was a statutory employee under § 2750.5.  Thus, the Court cannot determine on this motion whether Plaintiff is an employee as a matter of law under § 7053.[1]  Accordingly, Plaintiff's motion for summary judgment as to his employee status is **DENIED**.[2]

> 2.      Defendant's Standing to Assert Counterclaims

Plaintiff next argues that Defendant has no standing to bring its counterclaims because it is not authorized to conduct intrastate business in California.  Under California Corporations Code § 2105(a), "[a] foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification."  Any corporation that fails to obtain such certificate of qualification "shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this state."  Cal. Corp. Code § 2203(c); *United Med. Mgmt. Ltd. v. Gatto*, 49 Cal. App. 4th 1732, 1740 (1996) ("If the defendant establishes the bar of the statute, . . . the matter should be stayed to permit the foreign corporation to comply. If the foreign corporation plaintiff complies . . . by qualifying and paying fees, penalties and taxes, it may maintain the action. If the foreign corporation fails to comply, the matter should be dismissed without prejudice.").  Defendant argues that § 2203 does not apply because it conducts only interstate business.

"A [counter-]defendant who seeks to challenge a [counter-]plaintiff's standing under Cal. Corp. Code §§ 2105 and 2203 may do so by motion to dismiss for lack of standing. The [counter-]defendant, as moving party, bears the burden to prove that: 1) the action arose out of [counter-]plaintiff's transaction of intrastate business; and 2) the action was commenced prior to [counter-]plaintiff qualifying to transact intrastate business."  *See LeBlanc Nutritions, Inc. v. Advanced Nutra LLC*, CIV. S-05-0581-FCD-JFM, 2005 WL 1398538 (E.D. Cal. June 14, 2005) (citing, *e.g.*, *United Sys. of Ark., Inc. v. Stamison*, 63 Cal.App.4th 1001, 1007 (1998)).  "For purposes of qualification

---

[1]  Note that Defendant's summary judgment motion does raise the issue of § 7053's application to Plaintiff.   The Court will address it below in the context of that motion.

[2]  Because Defendant's estoppel theory relates only to whether Plaintiff should be estopped from arguing that he is a statutory employee under § 2750.5, it is moot in light of the Court's decision.

**United States District Court**
For the Northern District of California

1   under that section, 'transact[ing] intrastate business' means entering into repeated and successive

2   transactions of its business in this state, other than interstate or foreign commerce." *Id.* (citing Cal.

3   Corp. Code § 191(a)).  Whether a company transacts intrastate business is a question committed to

4   the "peculiar facts" of each case.  *See Le Vecke v. Griesedieck W. Brewery Co.*, 233 F.2d 772, 775

5   (9th Cir. 1956) (citing *W. Pub. Co. v. Superior Court of City & County of San Francisco*, 20 Cal. 2d

6   720, 727 (1942).  There is no dispute that Buczek is not qualified to transact intrastate business;

7   thus, the question is simply whether Buczek actually transacts such intrastate business and whether

8   its counterclaims arise out of such business.

9     The weight of the authority favors Plaintiff's position.  First, the plain language of the statute

10  applies to Buczek, as it defines intrastate business as "repeated and successive transactions of []

11  business in this state."  It is undisputed that Buczek has conducted "repeated and successive

12  transactions" in California, as it has entered into multiple yearly independent contractor agreements

13  with Mr. Hurst and other contractors, and has maintained in-state properties for numerous clients

14  since at least 2007.  *See* DiBello Decl., Docket No. 36, Exs. E-I (contractor agreements); Buczek

15  Depo. at 44, 184 (Buczek had six contractors in Northern California in 2007 and 15-25 in 2008-

16  2009); *id.* at 271-72 (Buczek had 5-10 clients in Northern California).

17    Second, the available case law weighs in Plaintiff's favor.  For example, in *Neogard*, the

18  California Court of Appeal encountered the following scenario:

19     Neogard's function in California was to develop a market for the
20     waterproofing "system," that is the package consisting of the solvent
       and its application process.  While the corporation did not maintain
21     inventory, an office, a bank account, a telephone number, or payrolled
       employees in the state during the decade in question, it nonetheless
22     played an active local role in all critical areas of the marketing
       process: selling the system to architects, controlling how and by whom
23     the system was physically applied, guaranteeing its quality, and
       supervising the repair of subsequent defects.

24     …

25     [Neogard] established relations with and paid commissions to
       manufacturer's representatives residing in this state.  It sent sales
26     representatives intrastate to induce construction contracts between
       California project designers and California waterproofing
27     subcontractors.  It assisted the latter in obtaining such contracts.  It
       entered into contracts with such subcontractors and utilized this fact to
28     induce contracts between the in-state parties.  It supervised the

1  physical in-state application of its waterproofing system.  It signed
2  contracts in-state to guarantee these projects and provided in-state
   supervision when defects appeared.  No one of the foregoing activities
3  would necessarily have constituted intrastate business.  Together,
   despite the fact that Neogard strategically maintained no payrolled
   office here, they did.

4

5  *Neogard Corp. v. Malott & Peterson-Grundy*, 106 Cal. App. 3d 213, 216, 226 (1980).  The court

6  concluded that Neogard engaged in intrastate commerce even though its in-state activities were still

7  geared toward the ultimate goal of increasing its interstate sales.  *See id.* at 224 ("[The Supreme

8  Court] clearly reject[ed] the contention made here by Neogard that any in-state act whose ultimate

9  objective is an increase in interstate commerce must be classified as an interstate act for purposes of

10  a qualification statute.") (citing *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 290-91 (1961)

11  (Douglas, J. dissenting)).

12      This case is similar to *Neogard* in many ways.  For example, Buczek has "established

13  relations with and paid . . . [contractors] residing in this state" to do Buczek's work for its clients.

14  *Id.* at 226.  Specifically, Buczek employed (whether as independent contractors or as employees)

15  between six and twenty-five workers in Northern California alone during the time Mr. Hurst worked

16  for the company.  Buczek Depo. at 44, 184.  It sent these contractors intrastate to perform its

17  contracts, and induced them to enter into sub-contracts with other local workers to help them

18  complete their work.  Hurst Depo. at 324 (Mr. Hurst sometimes had to hire up to a dozen other

19  people to help him complete the work orders on time).  Buczek "supervised the physical in-state"

20  performance of its contracts – through its work orders, photo documentation requirements, and by

21  sending representatives to validate the work and conduct a quality control review – and "provided

22  in-state supervision when defects appeared."  *Neogard*, 106 Cal. App. 3d at 226; *see* Hurst Depo. at

23  296; Hurst Decl., Docket No. 45, Ex. E; Buczek Depo. at 89, 106-07, 173.  Taking the facts in the

24  light most favorable to Buczek, the fact that it performed said supervision is not in dispute, even

25  though the overall extent of its daily control is disputed.

26      While some aspects of this case involve less intrastate activity than in *Neogard* (*e.g.*, Buczek

27  did not focus on fostering and inducing contracts between intrastate parties, although its contractors

28  did purchase supplies and supplemental labor in-state), other aspects point to stronger intrastate

United States District Court

For the Northern District of California

activity (*e.g.*, the "product" Buczek offered its clients was labor performed solely inside California, whereas Neogard manufactured and shipped its products from out of state).   On balance, *Neogard* thus weighs in favor of requiring Buczek to qualify to do business in California.

   *Le Vecke* provides further support for Buczek's intrastate role.   In that case, the court held that one company engaged in intrastate commerce, while another did not.   Specifically, one company (Griesedeck) that engaged in only "sporadic and transient sales promotional activities" via, *e.g.*, four annual trips to give tips to retailers selling its products, point of purchase advertising materials, and control over resale prices, was not engaged in intrastate commerce.   *Le Vecke*, 233 F.2d at 776.   In contrast, a company (Carling) that maintained an office in the state and employed a regional representative and six field representatives, "four of whom spend substantial amounts of their time in the interests of Carling Brewing Company within the State of California," engaged in intrastate commerce.   *Id.* at 777.   Although it does not have an office, Buczek's conduct is more like Carling's than Griesedeck's.   Mr. Hurst worked five or more days per week while he worked for Buczek, and he was not Buczek's only contractor in Northern California.   Hurst Depo. at 238; Buczek Depo. at 44, 68, 184.   Thus, Buczek's activities in California, at least during the period in which Hurst worked for the company, were not "sporadic and transient," but rather "continuing and substantial."   *Le Vecke*, 233 F.2d at 776.

   In contrast to the above case law, Buczek seeks to analogize its conduct to cases holding that a company that merely solicits business within a state, but accepts the contract offer out of state, does not transact intrastate commerce.   *See* Cal. Corp. Code § 191(c)(6) ("Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where those orders require acceptance outside this state before becoming binding contracts," is not transacting intrastate business).   In *LeBlanc*, for example, the court concluded that the corporation had not engaged in intrastate business because it had only "entered into two transactions, between California and Japan." *Id.* (citing Cal. Corp. Code § 191(c)(6)); *Thorner v. Selective Cam Transmission Co.*, 180 Cal. App. 2d 89 (1960)).   The plaintiff (a Japanese corporation) purchased products from a California defendant which the defendant shipped from California to Japan.   The plaintiff then sold the products in Japan.   The court found such conduct to be insufficient to constitute intrastate

1    business because the plaintiff simply entered into a contract to purchase products from California.

2    *Id.* at *3.  Similarly, in *Thorner*, a promissory note executed in California payable to a foreign

3    corporation was not intrastate business, even where the negotiations for said loan took place in

4    California.  *Thorner*, 180 Cal. App. 2d at 91; *see also Detsch & Co. v. Calbar, Inc.*, 228 Cal. App.

5    2d 556, 567 (1964) ("Where, as in the present case, there is a solicitation within the State of

6    California of orders for goods by a local distributor or agency acting on behalf of a foreign

7    corporation, such orders being subject to acceptance or rejection by the foreign corporation in

8    another state and where, upon approval of the orders, the goods purchased pursuant thereto are

9    shipped directly from such other state to the purchasers in California, such sales and shipment

10   constitute interstate commerce and the prior solicitation incidental thereto is a part of such interstate

11   transaction and is not intrastate commerce.").

12           Buczek seeks to read this general rule – that merely soliciting or procuring orders in-state

13   does not constitute intrastate commerce when acceptance of the offer comes from out-of-state – as

14   essentially mandating a finding that businesses do not engage in intrastate commerce anytime a

15   contract has an out-of-state party.  Buczek argues that because its in-state workers perform contracts

16   that it entered out of state with clients who are also out of state, there is no intrastate business.

17   However, the above scenarios bear little relationship to the instant case, in which Buczek hired

18   workers to perform work *inside* the state continuously over a period of years.  Unlike *LeBlanc* and

19   *Thorner*, here the *performance* of the contract – not simply its negotiation – took place entirely

20   within the state.  Rather than merely shipping goods or money to or from the state, Buczek contracts

21   for workers to perform services inside the state.  Thus, instead of performing in-state work for the

22   purpose of facilitating interstate commerce, here the *object* of the contracts themselves is labor

23   inside the state.  Indeed, one could read *LeBlanc* and *Thorner* to be inapposite, as their fact patterns

24   are reversed from the instant case.  Whereas in *LeBlanc* and *Thorner*, companies solicited business

25   inside the state but performed the contracts outside the state, here Buczek has done just the opposite.

26   *Le Vecke* and *Neogard* are thus more on point given their discussions of workers' continuous in-state

27   activity.

28

United States District Court

For the Northern District of California

1    United States Supreme Court authority construing similar statutes in other states does not

2  mandate otherwise.  First, while Buczek argues briefly that Hurst's proposed construction of the

3  statute would run afoul of the Commerce Clause, settled case law is to the contrary.  *See Union*

4  *Brokerage*, 322 U.S. at 212 ("[I]n denying Union the right to go to her courts because Union did not

5  obtain a certificate to carry on its business as required by the Foreign Corporation Act, Minnesota

6  offended neither federal legislation nor the Commerce Clause.").  Thus, so long as Buczek's claims

7  arise from intrastate business, the statutory bar is proper.

8    Second, the Supreme Court's holdings as to what constitutes intrastate commerce continue to

9  support Plaintiff.  For example, in *Allenberg*, the Supreme Court found that cotton, which had been

10  delivered to and stored in a warehouse in-state, "was still in the stream in interstate commerce" and

11  therefore did not render a company subject to state qualification laws.  *Allenberg Cotton Co., Inc. v.*

12  *Pittman*, 419 U.S. 20, 30 (1974).  In contrast, in *Eli Lilly*, the Supreme Court found that Eli Lilly had

13  engaged in intrastate business in New Jersey because it employed eighteen "detailmen" who worked

14  in an in-state office and not only solicited interstate orders for Lilly's pharmaceutical products, but

15  also fostered business development between hospitals and the in-state wholesalers that carried the

16  company's products.  *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 278-81 (1961).

17  Similarly, in *Union Brokerage*, the Court found that Union – a customhouse brokerage business

18  operating at a port of entry from Canada – had "localized" its business in Minnesota where it bought

19  "materials and services from people in that State" and had entered into business relationships

20  "wholly outside of the arrangements it makes with importers or exporters."  *Union Brokerage Co. v.*

21  *Jensen*, 322 U.S. 202, 208 (1944).  Notably, the business relationship the Court considered to be

22  "wholly outside" Union's interstate commerce was its suit against its former president for breach of

23  fiduciary duty "in relation to Union's business, that of customhouse brokerage."  *Id.* at 202.  Thus,

24  the fact that the local relationships in question were in furtherance of Union's interstate conduct did

25  not preclude the Court from finding that Union also acted intrastate.

26    Finally, though dated, there is authority for the proposition that a foreign company that

27  performs construction work within the state transacts intrastate business.  *See Gen. Ry. Signal Co. v.*

28  *Commonwealth of Virginia ex rel. State Corp. Comm'n*, 246 U.S. 500, 509-10 (1918) (finding

United States District Court

For the Northern District of California

1  business transacted intrastate commerce where "[i]n order to construct the[] signals as required by

2  the contract it was necessary to employ in this state labor, skilled and unskilled, to dig ditches in

3  which conduits for the wires are placed, to construct concrete foundations, and to paint the

4  completed structures").

5        Unlike the commodities involved in *Allenberg*, here both the service (repair and

6  maintenance) and the object of the service (physical property) are not transferable into interstate

7  commerce.  The labor for which Buczek contracts does not move across state lines, nor do the

8  homes on which Buczek's contractors work.  *Cf. M. & R. Const. Co. v. Nat'l Homes Corp.*, 286 F.2d

9  638, 640 (5th Cir. 1961) (contract to ship prefabricated homes into the state did not necessarily mean

10  the company was engaged in intrastate commerce).  Thus, Buczek's conduct here is arguably even

11  more localized than that discussed in *Eli Lilly* and *Union Brokerage*.  The only component of the

12  transaction(s) which can be said to be "interstate" is the source of payment for said work.  It is thus

13  substantively different from soliciting interstate business, wherein a party enters the state to solicit

14  customers for its out-of-state products.  Here, the "products" offered – workers who can clean,

15  maintain, and repair homes – are provided within the state of California.  The Court therefore

16  concludes that "[t]o hold under the facts above recited that [Buczek] is not doing business in

17  [California] is to completely ignore reality."  *Eli Lilly*, 366 U.S. at 280.

18        The parties' dispute over whether Mr. Hurst was an employee or an independent contractor is

19  also not controlling on this question.  While § 191 provides that a corporation cannot be held to

20  transact intrastate business "solely by reason of . . . effecting sales through independent contractors,"

21  Cal. Corp. Code § 191(c)(5), that provision is of limited relevance in this case because the

22  contractors at issue (assuming they are only independent contractors) not only "effect sales" but also

23  perform the contracts themselves.  *Cf. Mediterranean Exports, Inc. v. Superior Court*, 119 Cal. App.

24  3d 605, 616-17 (1981) (finding that "there is at least a triable issue of fact as to whether

25  Mediterranean's activities in this State amounted to the transaction of 'intrastate business'" where

26  Mediterranean had presented evidence that its in-state "activities consisted of the solicitation of

27  orders for ceramic tile [manufactured in and shipped from Italy] by salesmen who were independent

28  contractors; that the orders placed in California required acceptance by Mediterranean in Florida

1  before they became binding contracts; and that the office and its staff were maintained for use by the

2  soliciting salesmen").  Other California cases cited above clarify that the role of the in-state workers,

3  rather than their legal status as employee or independent contractor, is most relevant.  *See Le Vecke*,

4  233 F.2d at 777 (describing work of "field representatives" without specifying their legal status);

5  *Neogard*, 106 Cal. App. 3d at 226-27 (same with respect to, *e.g.*, "sales representatives").

6        Accordingly, the Court concludes that there is no genuine issue of fact as to whether Buczek

7  conducts intrastate business in California, and **GRANTS** summary judgment to Plaintiff on this

8  issue.  Typically, the correct course of action would be to stay Defendant's counterclaims pending

9  its completion of qualification requirements under California law.  *See United Med.*, 49 Cal. App.

10  4th at 1740.  However, at oral argument, Defendant represented that it would complete the

11  qualification requirements within three weeks.  Therefore, the Court will conditionally recognize its

12  counterclaims and proceed to consider its motion for summary judgment.

13  C.    Defendant's Motion for Summary Judgment

14        Buczek moves for summary judgment on the following twelve grounds: (1) Plaintiff is

15  barred by § 7031 from bringing any action to recover payment for unlicensed work that requires a

16  contractor's license, thus precluding his first through ninth causes of action; (2) Plaintiff is estopped

17  from claiming that he is a statutory employee under § 2750.5; (3) Plaintiff's first cause of action for

18  failure to pay wages fails; (4) Plaintiff's second cause of action for overtime fails; (5) Plaintiff's

19  third cause of action for failing to provide meal and rest breaks fails; (6) Plaintiff's fourth cause of

20  action for failing to provide accurate wage statements fails; (7) Plaintiff's fifth cause of action for

21  breach of the implied covenant of good faith and fair dealing fails; (8) Plaintiff's sixth cause of

22  action for violation of Labor Code § 2802 fails; (9) Plaintiff's seventh cause of action for unfair

23  competition fails; (10) Plaintiff's eighth cause of action for civil penalties fails; (11) Plaintiff's ninth

24  cause of action for failure to pay minimum wage fails; and (12) Buczek's first and second causes of

25  action for breach of contract and breach of the implied covenant of good faith and fair dealing

26  warrant summary judgment.

27  ///

28  ///

1.     <u>Section 7031 and Plaintiff's Employee Status</u>

Defendant first argues that Plaintiff is barred from bringing his claims by § 7031 of the California Business and Professions Code.  However, the Court's analysis with respect to Plaintiff's summary judgment motion disposes of much of Defendant's argument.  As discussed above, Plaintiff is not barred by § 7031 from bringing his claims if he can show that he was an employee pursuant to § 7053.  *See* Cal. Bus. & Prof. Code § 7053 (providing that § 7031 does not apply to "any person who engages in the activities herein regulated as an employee who receives wages as his or her sole compensation, does not customarily engage in an independently established business, and does not have the right to control or discretion as to the manner of performance so as to determine the final results of the work performed").  Accordingly, the question is whether Plaintiff can satisfy the § 7053 standard for employee status.

Defendant argues that Plaintiff cannot show that he was an employee.  The parties do not dispute that the standard under Section 7053 to determine employee status conforms to the common law test of employee.  "The principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal. 3d 943, 946 (1970); *S.G. Borello & Sons, Inc. v. Department of Indus. Relations*, 48 Cal.3d 341, 350 (1989) (same).  In addition to the factor of the right to control, other factors the Court considers include:

> (1) whether the worker is engaged in a distinct occupation or business, whether, considering the kind of occupation and locality, the work is usually done under the principal's direction or by a specialist without supervision, (3) the skill required, (4) whether the principal or worker supplies the instrumentalities, tools, and place of work, (5) the length of time for which the services are to be performed, (6) the method of payment, whether by time or by job, (7) whether the work is part of the principal's regular business, and (8) whether the parties believe they are creating an employer-employee relationship.

*Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1013 (N.D. Cal. 2010) (citing *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1, 10, 64 Cal.Rptr.3d 327 (2007)).

"The question of whether plaintiff was functioning as an unlicensed contractor or merely as an employee hired by defendants to supply material and act as an employee is essentially a question

**United States District Court**
For the Northern District of California

of fact." *Vaughn v. Dekreek*, 2 Cal. App. 3d 671, 677 (1969) (citing *Cargill v. Achziger*, 165 Cal.App.2d 220, 222 (1959)).  As *Vaughn* explained,

> The determination of whether the status of an employee or that of an independent contractor exists is governed primarily by the right of control which rests in the employer, rather than by his actual exercise of control; and where no express agreement is shown as to the right of the claimed employer to control the mode and manner of doing the work, the existence or nonexistence of the right must be determined by reasonable inferences drawn from the circumstances shown, and is a question for the jury.

*Id.* at 677 (citing *Hardin v. Elvitsky*, 232 Cal.App.2d 357, 373 (1965); *Dahl-Beck Electric Co. v. Rogge*, 275 Cal. App. 2d 893 (1969)).  "In order to establish a fact as a matter of law the state of the evidence must be such that no other conclusion is legally deducible therefrom.  Where there is a conflict in the evidence from which either conclusion could be reached as to the status of the parties, the question must be submitted to the jury." *Dahl-Beck*, 275 Cal. App. at  900 (internal citations omitted).

In this case, California and Ninth Circuit authority preclude granting summary judgment on the facts shown thus far.  For example, in *Dahl-Beck*, the court found that there was a jury question as to employment status where evidence indicated that "plaintiff's representative told Stradford where to dig, when to come to work and what degree of care was required.  There was no evidence of any supervision by defendant Rogge.  From such evidence the jury was entitled to find that Stradford was an employee of plaintiff and under plaintiff's direct control." *Dahl-Beck*, 275 Cal. App. 2d at 900-01 (citing *Rodoni v. Harbor Engineers*, 191 Cal.App.2d 560, 562 (1961)).  Similarly, the Ninth Circuit reversed a district court's order granting summary judgment even though many indicia pointed to an independent contractor relationship, including contracts labeling the workers "independent contractors," plaintiffs' purported ability to pick and choose assignments, and the fact that plaintiffs drove their own trucks, supplied some of their own equipment, received payment on a per-job basis, and determined their own routes. *Narayan v. EGL*, Inc., 616 F.3d 895, 902-03 (9th Cir. 2010).

In the instant case, there is sufficient evidence to survive summary judgment.  For example, the parties' contracts gave Buczek the right to discharge Hurst without cause, a strong indicator of

United States District Court

For the Northern District of California

an employment relationship. *Borello*, 48 Cal. 3d at 350-51 ("Strong evidence in support of an employment relationship is the right to discharge at will, without cause.") (quoting *Tieberg*, 2 Cal.3d at 949); DiBello Decl., Docket No. 36, Ex. E, ¶ 2.  Hurst worked exclusively for Buczek during the relevant time period, and Buczek sent him work orders daily directing him where to go and what to do. *Narayan*, 616 F.3d at 902 ("[T]he plaintiff Drivers drove exclusively for EGL during their period of employment."); Hurst Depo. at 238; Hurst Decl., Docket No. 45, ¶¶ 11-12.  Although Buczek avers that Hurst could turn down work orders, Hurst claims that he was not able to do so in practice and produces evidence supporting his position.  *See, e.g*., Hurst Decl., Docket No. 45, Ex. D (memo from Buczek telling contractors that they cannot turn down work orders); *Narayan*, 616 F.3d at 902 ("The plaintiff Drivers also submitted evidence that, although their contracts purportedly gave them the right to pick and choose assignments, in practice, EGL presented them with batches of deliveries that they generally had to accept as an all-or-nothing proposition.").  In addition, between the detailed work orders, training sessions, instructional memoranda, conference calls, and substantial photo documentation requirement, a jury could reasonably conclude that Buczek exercised control over both "the manner and means of accomplishing the result desired." *Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 77 (2009) (citing *Empire Star Mines Co. v. Cal. Emp. Com.*, 28 Cal.2d 33, 43-44 (1946)); *Narayan*, 616 F.3d at 901-02 ("The drivers used EGL-supplied forms, received company memoranda and attended meetings on company policies. The Handbook also provided guidelines on how to communicate with EGL's dispatch, instructing drivers to notify the dispatcher before leaving EGL's facility dock, to contact the dispatcher after each delivery stop to report that the delivery was completed, and to immediately report any traffic delays.").

Against this evidence, the evidence pointing away from employee status is not sufficient to warrant summary judgment.  For example, that Plaintiff supplied his own equipment and even, in some instances, his own supplemental workers, does not necessarily make him a contractor.  *See Cargill*, 165 Cal. App. 2d at 223 ("There is nothing in the chapter [containing § 7053] requiring the licensing of contractors which precludes one from furnishing materials as a supplier and then installing them as an employee."); *Dahl-Beck*, 275 Cal. App. 2d at 901 (collecting cases).  Similarly,

United States District Court

For the Northern District of California

1    "[t]hat [Mr. Hurst] here had contracts 'expressly acknowledging that [he was an] independent

2    contractor[]' is simply not dispositive under California's test of employment." *Narayan*, 616 F.3d at

3    903 (quoting *Borello*, 48 Cal. 3d at 349).

4         Defendant also appears to argue that because its supervision of Plaintiff was at the behest of

5    its clients and/or the Department of Housing and Urban Development ("HUD"), it did not actually

6    control Plaintiff. *See* Mot. at 12.  However, it is not clear why the *reason* for Defendant's control

7    over Plaintiff is relevant, and Defendant cites to no authority so holding.  Indeed, Defendant's

8    argument, if accepted, would seem to indicate that any worker who completes tasks that are geared

9    toward implementing client requests would become a contractor rather than an employee.  Yet at

10   some level, all company control and supervision over its workers are geared toward satisfying its

11   clients and customers.  Defendant's attempt to draw a line between some hypothetical form of

12   supervision it would implement absent client demands or legal requirements, on the one hand, and

13   the actual form of supervision it implemented, on the other, is unpersuasive.  Indeed, Ninth Circuit

14   authority suggests that such justifications may be indicative of an employment relationship.  *See*

15   *Narayan*, 616 F.3d at 902 (considering evidence of employer controls as supporting employment

16   status, including requirements "imposed to meet 'the industry standard, the DOT regulation, and . . .

17   customer's requirements.'").

18        Even case law ultimately concluding that workers were independent contractors does not

19   help Defendant, as these cases tend to review only for substantial evidence and highlight the need to

20   determine employment status through the trier of fact.  *See, e.g.*, *Cristler*, 171 Cal. App. 4th at 78

21   ("[A]ppellate case law in this area arises primarily in the context of substantial evidence review of

22   the determinations of the relevant fact finder."); *Fireman's Fund Ins. Co. v. Davis*, 37 Cal. App. 4th

23   1432, 1443 (1995) (reviewing a trial court's determination for substantial evidence based on its

24   "resol[ution] [of] conflicting inferences"); *Vaughn*, 2 Cal. App. 3d at 677 (finding jury's conclusion

25   that plaintiff was an independent contractor reasonable where "Defendants stated generally what

26   they wanted in the yard, but the manner and mode, and even the selection of some of the plants and

27   the direction of the workmen, was left to plaintiff.").

28

United States District Court

For the Northern District of California

1    Moreover, even if Plaintiff was unable to show that he met the § 7053 requirements for

2  exemption from § 7031's bar, Defendant has not shown that all of the work on which Plaintiff's

3  claims are based required a license and was therefore subject to § 7031 in the first place.

4  Accordingly, Defendant would not be entitled to summary judgment as to any of Plaintiff's claims to

5  the extent they were otherwise valid and not based on work that required a license. *See Executive*

6  *Landscape Corp. v. San Vicente Country Villas IV Assn.*, 145 Cal. App. 3d 496, 501 (1983)

7  (reversing grant of demurrer where "the contract [] can reasonably be interpreted to require

8  Executive to perform work for which no license was required").

9    Finally, the Court overrules Defendant's objections to Plaintiff's proffered evidence because,

10  while it may dispute Plaintiff's account of events, Plaintiff's statements appear to be based on

11  personal knowledge and conducive to presentation "in a form that would be admissible in evidence."

12  Fed. R. Civ. P. 56(c)(2).

13    Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's

14  employment status.

15    2.    Estoppel

16    Defendant argues that Plaintiff is estopped from arguing that he is a statutory employee

17  under § 2750.5 of the Labor Code.  Because, as discussed above, § 2750.5 does not apply here, this

18  argument is moot.

19    3.    First Cause of Action – Wages

20    Defendant argues that Plaintiff is barred from raising this claim pursuant to § 7031 of the

21  Business and Professions Code.  As discussed above in the context of Plaintiff's motion for

22  summary judgment, the Court rejects this argument. Similarly, to the extent Defendant argues that

23  summary judgment is appropriate based on Plaintiff's status as an independent contractor, that claim

24  has also been rejected above.  Defendant's motion for summary judgment as to Plaintiff's first cause

25  of action is **DENIED**.

26    4.    Second Cause of Action – Overtime

27    Defendant argues that Plaintiff is barred from raising this claim pursuant to § 7031 of the

28  Business and Professions Code.  As discussed above in the context of Plaintiff's motion for

**United States District Court**
For the Northern District of California

1   summary judgment, this argument is rejected.  Similarly, to the extent Defendant argues that

2   summary judgment is appropriate based on Plaintiff's status as an independent contractor, that claim

3   has also been rejected above.

4        Defendant also argues that Mr. Hurst cannot meet his burden to show that he worked

5   overtime because Buczek's workers do not submit timecards and Mr. Hurst has purportedly admitted

6   that he does not have records, time sheets, or schedules.  Mot. at 17-18; Hurst Depo. at 390.

7   However, the Court notes that Mr. Hurst did state that while he never submitted time cards to

8   Buczek, he did submit work schedules "several times."  Hurst Depo. at 390.

9        The California Court of Appeal has explained the problem of a lack of accurate records as to

10  overtime as follows:

11           Although the employee has the burden of proving that he performed
             work for which he was not compensated, public policy prohibits
12           making that burden an impossible hurdle for the employee.  [W]here
             the employer's records are inaccurate or inadequate and the employee
13           cannot offer convincing substitutes a ... difficult problem arises.  The
             solution, however, is not to penalize the employee by denying him any
14           recovery on the ground that he is unable to prove the precise extent of
             uncompensated work.  Such a result would place a premium on an
15           employer's failure to keep proper records in conformity with his
             statutory duty; it would allow the employer to keep the benefits of an
16           employee's labors without paying due compensation....  In such a
             situation we hold that an employee has carried out his burden if he
17           proves that he has in fact performed work for which he was
             improperly compensated and if he produces sufficient evidence to
18           show the amount and extent of that work as a matter of just and
             reasonable inference.  The burden then shifts to the employer to come
19           forward with evidence of the precise amount of work performed or
             with evidence to negative the reasonableness of the inference to be
20           drawn from the employee's evidence.  If the employer fails to produce
             such evidence, the court may then award damages to the employee,
21           even though the result be only approximate.

22  *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1377 (2007) (quoting

23  (*Hernandez v. Mendoza*, 199 Cal.App.3d 721, 727 (1988)).

24        Here, Plaintiff states that he routinely worked more than eight hours per day and sometimes

25  worked 12-16 hours per day.  Hurst Decl., Docket No. 45, ¶ 24.  More specifically, he states that he

26  typically worked from 6:00 a.m. until 5:00 p.m., and frequently again from 8:00 until 10:00 or 11:00

27  p.m.  *Id.*  Buczek confirmed in deposition that Plaintiff worked up to seven days per week.  Buczek

28  Depo. at 68.  Buczek has not carried its burden of demonstrating the absence of a genuine issue of

1    fact on this question.  *See Hernandez*, 199 Cal. App. 3d at 727 (accepting as sufficient evidence

2    testimony "that on most days from November 1983 through July 1984 he was required to be on his

3    employers' premises from 8 a.m. until 9 p.m. or during the store's regular hours").  In addition,

4    Buczek's work system may offer a reasonable basis for a jury to infer Plaintiff's overtime hours.

5    Buczek may be able to attack any overtime award at a later date based on the quality of evidence

6    presented at trial, but summary judgment does not appear warranted.  *Id.* at 726-27 ("Once an

7    employee shows that he performed work for which he was not paid, the *fact* of damage is certain;

8    the only uncertainty is the *amount* of damage. In such a case, it would be a perversion of justice to

9    deny all relief to the injured person, thereby relieving the wrongdoer from making any restitution for

10   his wrongful act.") (internal citations omitted) (emphasis in original).

11        Accordingly, summary judgment is **DENIED** as to Plaintiff's overtime claim.

12        5.    <u>Third Cause of Action – Meal and Rest Breaks</u>

13        Defendant argues that Plaintiff is barred from raising this claim pursuant to § 7031 of the

14   Business and Professions Code.  As discussed above in the context of Plaintiff's motion for

15   summary judgment, this argument is rejected.  Similarly, to the extent Defendant argues that

16   summary judgment is appropriate based on Plaintiff's status as an independent contractor, that claim

17   has also been rejected above.

18        Defendant also argues that Mr. Hurst cannot meet his burden to show that he was not

19   provided with meal and rest breaks because he cannot demonstrate when he failed to take those

20   breaks and why.  The California Supreme Court has recently clarified that an employer need not

21   ensure that employees take meal and rest breaks; rather, it need only make them available.  *See*

22   *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 2012 WL 1216356, at *14 (Cal. Apr. 12, 2012)

23   ("We conclude that under Wage Order No. 5 and Labor Code section 512, subdivision (a), an

24   employer must relieve the employee of all duty for the designated period, but need not ensure that

25   the employee does not work.").  However, the only evidence currently in the record is Plaintiff's

26   testimony that his workload precluded him from taking off-duty breaks, and that he typically ate

27   while working or did not take a break at all.  Hurst Decl., Docket No. 45, ¶ 12.  Thus, Defendant has

28   not sustained its burden to demonstrate that summary judgment is warranted.  *See Brinker*, 2012 WL

United States District Court

For the Northern District of California

1216356, at *18 ("[A]n employer may not . . . pressur[e] employees to perform their duties in ways

that omit breaks.").  Defendant's motion for summary judgment as to Plaintiff's third cause of action

is **DENIED**.

6.     Accurate Wage Statements   Fourth Cause of Action – Accurate Wage Statements

As discussed above in the context of Plaintiff's motion for summary judgment, Defendant's

arguments regarding § 7031 and Plaintiff's employment status are rejected.

Defendant also contends that Plaintiff cannot prove its failure to provide accurate wage

statements was knowing and intentional, and therefore is not entitled to penalties under § 226(e).

Mot. at 20; *see* Cal. Labor Code § 226(e) (awarding penalties where failure to provide accurate

statements was "knowing and intentional").  This Court has previously held that when a party makes

a good faith claim that a worker is an independent contractor, its failure to provide accurate wage

statements is not knowing and intentional.  *See Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128,

1146 (N.D. Cal. 2009); *see also Dalton v. Lee Publications, Inc.*, 08CV1072 BTM NLS, 2011 WL

1045107, at *5 (S.D. Cal. Mar. 22, 2011) ("Although the Court finds that Defendant has not satisfied

its burden of showing that it is entitled to summary judgment on the ground that Plaintiff is an

independent contractor, it is clear that a good faith dispute exists as to whether Defendant's

newspaper distributors are exempt from the California Labor Code provisions at issue.").  As

Plaintiff has provided no evidence or argument to the contrary, *see* Opp. at 19, the Court **GRANTS**

summary judgment to Defendant on Plaintiff's claim for penalties under § 226(e).

7.     Fifth Cause of Action – Breach of Implied Covenant of Good Faith and Fair Dealing

As discussed above in the context of Plaintiff's motion for summary judgment, Defendant's

arguments regarding § 7031 and Plaintiff's employment status are rejected.

Defendant also seems to argue that no employment contract exists on which Plaintiff could

base his implied covenant claim, although its point is not entirely clear.  Mot. at 21.  However, such

a claim appears to be derivative of Defendant's position that Mr. Hurst was merely an independent

contractor, not an employee.  Accordingly, given the Court's previous conclusions, Defendant offers

no basis for summary judgment as to this claim.  Defendant's motion is **DENIED** as to the fifth

cause of action.

United States District Court

For the Northern District of California

8.     <u>Sixth, Seventh, and Ninth Causes of Action – Labor Code § 2802, Unfair</u>

<u>Competition, and Minimum Wage</u>

Defendant's only arguments against these three claims are based on its estoppel and independent contractor theories, which fail as stated above.  Defendant's motion is **DENIED** as to these causes of action.

9.     <u>Eighth Cause of Action – Civil Penalties</u>

To the extent Defendant argues against this cause of action based on estoppel and independent contractor theories, its argument fails.

However, Defendant also argues that Plaintiff's claim for civil penalties under Labor Code § 1021.5 is defective because Plaintiff represented that he would follow all applicable laws, including obtaining the necessary licenses.  Labor Code § 1021.5 provides, "Any person who holds a valid state contractor's license issued pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and who willingly and knowingly enters into a contract with any person to perform services for which a license is required as an independent contractor, and that person does not meet the burden of proof of independent contractor status pursuant to Section 2750.5 or hold a valid state contractor's license, shall be subject to a civil penalty in the amount of two hundred dollars ($200) per person so contracted with for each day of the contract."  Defendant seems to argue that because Plaintiff's contract stated that Plaintiff would follow all applicable laws (which Defendant reads to include obtaining any necessary licenses), Defendant could not have acted willingly and knowingly in engaging his services.  Mot. at 23-24.  However, Plaintiff testifies that he informed Defendant he was unlicensed before he began working for Buczek and never represented otherwise during his tenure with the company.  Hurst Decl., Docket No. 45, ¶ 3; Hurst Depo. At 242.  Moreover, Hurst provides the Court with a memo from Buczek in February 2010 describing the process for becoming licensed, suggesting Buczek knew he was unlicensed.  *See* Hurst Decl., Docket No. 45, Ex. N.  There is thus a disputed issue of fact as to whether Buczek acted knowingly and willingly in hiring an unlicensed contractor.

Accordingly, summary judgment is **DENIED** as to this claim.

United States District Court

For the Northern District of California

1       10. <u>Buczek's Causes of Action – Breach of Contract and Implied Covenant</u>

2      Finally, Buczek argues that summary judgment is warranted on its two counterclaims against

3    Mr. Hurst because: (1) Mr. Hurst has materially breached the Agreement by, *inter alia*, failing to

4    timely perform services in a good and reasonable workmanlike manner; (2) Mr. Hurst has admitted

5    to performing work which required a license although he had no license, which is a breach of both

6    his contract and the implied covenant of good faith and fair dealing.

7      As noted above, the Court will conditionally recognize Defendant's counterclaims in

8    anticipation that it will comply with California's qualification requirements as represented to the

9    Court at oral argument.  *See* Cal. Corp. Code §§ 2105(a), 2203(c).

10     With respect to the first claim, the only evidence Defendant has produced regarding Mr.

11   Hurst's poor work is Buczek's own testimony that one of its clients placed it on probation, and that

12   it "guesstimate[d]" Mr. Hurst was responsible for 50% of its losses in Northern California during the

13   ensuing probation.  *See* Buczek Depo. At 251-52.  However, as Plaintiff points out, Buczek's

14   documents do not directly link Mr. Hurst with its probation.  *See* DiBello Decl., Docket No. 36, Ex.

15   L (listing client complaints about properties without describing which properties were Mr. Hurst's

16   responsibility, and listing complaints about Mr. Hurst's properties that post-dated the time in which

17   the client placed Hurst on probation).  Although Defendant offers one example in Reply of a Hurst

18   work order which was referenced in the client's probation letter as "one of the most recent" of eight

19   or more quality control problems leading to the probation, this single example is a far cry from

20   establishing as a matter of law that Mr. Hurst caused the probation and resulting damage to Buczek.

21   In addition, Plaintiff offers in response evidence that Buczek gave him a large number of work

22   orders during his time with the company, and that he was sometimes tasked with supervising other

23   workers.  Hurst Decl., Docket No. 45, ¶ 25.  He also offers a letter from Buczek expressing interest

24   in working with him again in the future.  *Id*., Ex. L.  Buczek further admits that it has not sued the

25   other worker it claimed was responsible for the other half of its losses.  Buczek Depo. at 252-53.

26   Such evidence is sufficient to raise an issue of fact as to whether Hurst was indeed responsible for

27   any losses and whether, even assuming he was responsible, his conduct would constitute a breach of

28   contract or breach of the implied covenant.

**United States District Court**
For the Northern District of California

1    As for the second claim, the fact that Hurst performed work requiring a license when he did

2 not possess such a license is only problematic, at the least, if he was not Buczek's employee.  Cal.

3 Bus. & Prof. Code § 7053.  Because Mr. Hurst's employment status is in dispute, summary

4 judgment is not warranted on this ground.

5    Accordingly, the Court **DENIES** Buczek's motion for summary judgment as to its

6 counterclaims.

7                                    III.    <u>CONCLUSION</u>

8    For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment as to

9 his employment status, and **GRANTS** the motion as to Defendant's standing to raise counterclaims

10 absent qualifying to do intrastate business in California.  The Court **GRANTS** Defendant's motion for

11 summary judgment as to Plaintiff's claim for penalties under Cal. Labor Code § 226(e), and **DENIES**

12 its motion for summary judgment as to all other claims.

13    This Order Disposes of Docket Nos. 35 and 39.

14

15    IT IS SO ORDERED.

16

17 Dated:  May 2, 2012

18

19                                    _____
                                      EDWARD M. CHEN
20                                    United States District Judge

21

22

23

24

25

26

27

28

26